UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OXEBRIDGE QUALITY
RESOURCES INTERNATIONAL,
LLC and CHRISTOPHER MARK
PARIS,

    Plaintiffs,

v.                                                                      Case No: 8:20-cv-2176-CEH-SPF

GUBERMAN PMC, LLC, DARYL
GUBERMAN and DONALD
LABELLE,

    Defendants.

## ORDER

This cause comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Verified Third Amended Complaint (Doc. 37), to which Plaintiffs respond in opposition (Doc. 39). Upon consideration of the filings, the Court will grant-in-part and deny-in-part the Motion to Dismiss.

    **I.    BACKGROUND**[1]

---

[1] The following statement of facts is derived from the operative complaint (Doc. 31), the allegations of which the Court must accept as true in ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and public records from *Paris et al. v. Levinson et al.*, No. 8:19-cv-00423 (M.D. Fla.), of which the Court may take judicial notice. *See*, *e.g.*, Fed. R. Evid. 201(b) (court may take judicial notice of public records that are "not subject to reasonable dispute"); *Horne v. Potter*, 392 F. App'x 800, *802 (11th Cir. 2010) (district court did not err by taking judicial notice of public filings from prior case without converting the motion to dismiss to a motion for summary judgment) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999)).

On September 16, 2020, Christopher Paris, along with Oxebridge Quality Resources International, LLC ("Oxebridge"), of which he is the sole member (collectively "Plaintiffs"), filed this action against Daryl Guberman, Donald LaBelle, and Guberman PMC, LLC, the company that Guberman and LaBelle own (collectively "Defendants"). Doc. 31 ¶¶1-3, 6. Paris is an industry expert who maintains a business and a news website, Oxebridge, in the field of quality management accreditation standards. *Id.* at ¶¶16-20. Defendants Guberman and LaBelle are also members of the quality management accreditation industry who publish information on a website and through an "extensive press release distribution network." *Id.* at ¶¶21-22.

This action relates to a prior action brought by the same plaintiffs against the same defendants in February 2019, asserting claims of defamation, tortious interference, and other related claims. *Id.* at ¶¶26-27; *see Paris et al. v. Levinson et al.*, No. 8:19-cv-00423-WFJ-SPF (M.D. Fla.) ("2019 Action").[2] On May 18, 2020, the district judge granted Plaintiffs' Motion for Default Judgment against Defendants. *See* Doc. 31-1; *see also Paris*, No. 8:19-cv-00423, Doc. 111 ("May 18 Order"). In its written Order, the court concluded:

> It is therefore ORDERED AND ADJUDGED:
>
> 1) Defendants shall remove any recording of the intercepted communication of June 22, 2017 from the world wide web.

---

[2] The 2019 Action initially named several other defendants, against whom all claims were voluntarily dismissed during the pendency of the proceedings. *See Paris*, No. 19-cv-00423, Docs. 68, 73.

> 2) Defendants shall remove the defaming posts listed at docket 110-1 and attached as an appendix to this Order.
> 3) The Clerk is directed to enter final default judgment in favor of Plaintiffs and against Defendants Daryl Guberman, Guberman PMC, LLC, and Donald LaBelle in the amount of $1,614,350.00 as compensatory damages, together with post-judgment interest.
> 4) The Clerk is directed to close the case.

*Id.* The clerk entered a final default judgment on May 19, 2020. *See* Doc. 37-1; *see also Paris*, No. 8:19-cv-00423, Doc. 112 ("May 19 Judgment"). [3] The May 19 Judgment stated:

> It is ORDERED AND ADJUDGED that judgment is entered in favor of Plaintiffs and against Defendants Daryl Guberman, Guberman PMC, LLC, and Donald LaBelle in the amount of $1,614,350.00 as compensatory damages, together with post-judgment interest.

*Id.* The May 19 Judgment did not reference the injunctive relief described in items (1) and (2) of the May 18 Order, nor did the court enter a separate order issuing the injunctive relief. The clerk then closed the case. The court subsequently denied Plaintiffs' requests for the court to clarify the order, amend the order, and reopen the case, as well as Defendants' motion to vacate. *Id.* at Docs. 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 126, 127, 128, 156.

Plaintiffs filed this action approximately two months after the denial of their last motion to reopen the 2019 Action. Now, Plaintiffs allege that Defendants "continue to publish new material defaming Plaintiffs, inclusive of but not limited to, false proclamations that they were victorious in the related federal lawsuit." Doc. 31 ¶22.

---

[3] Defendants' Motion to Dismiss erroneously describes the relief granted in the May 18 Order when referencing the May 19 Judgment. Doc. 37 at 3. Defendants also label one of the orders as the "May 20 Order," although no order was issued on that date. *Id.* at 8.

3

As a result, Plaintiffs continue to incur "substantial damages, losing numerous clients and making it difficult to procure new clients." *Id.* at ¶25. Further, Plaintiffs assert that Defendants have refused to comply with the injunctive relief described in the May 18 Order, thereby violating the permanent injunction. *Id.* at ¶37. Plaintiffs ask this Court to enforce the May 18 Order (Count I) and issue a declaratory judgment that Defendants' actions violated the May 18 Order (Count II). They also assert a claim of defamation per se based on conduct that has occurred since the 2019 Action (Count III). Defendants move to dismiss under Federal Rule of Civil Procedure 12. Doc. 37 at 1.

## II. LEGAL STANDARD

Under Rule 12(b)(1), Federal Rules of Civil Procedure, a party may raise, by motion, the defense of lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A defendant may attack subject-matter jurisdiction in two manners: facially or factually. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). A factual attack challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered,'" *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert. denied*, 449 U.S. 953 (1980)), while a facial attack merely requires a court to assess, while assuming the allegations of the complaint are true, whether the complaint sufficiently alleges a basis for jurisdiction, *McElmurray v. Consolid. Gov't of Augusta-Richmond Cnty.*,

4

501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)).

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III.   DISCUSSION

A. <u>Action to Enforce Permanent Injunction – Count I</u>

In their first claim, Plaintiffs seek to enforce the injunctive relief issued in the May 18 Order of the 2019 Action. Doc. 31 ¶¶ 38-42. Moving for dismissal, Defendants argue that "this Court has no jurisdiction to enforce [an]other court's injunctive relief through contempt" because no independent claim to enforce an injunction exists. Doc. 37 at 6. As a result, Defendants argue that Count I "fails to assert a cognizable cause

5

of action and should be dismissed with prejudice." *Id.* at 7.[4] Defendants rely on a body of caselaw in the Eleventh Circuit, summarized as follows:

> As we have explained repeatedly, "injunctions are enforced through the district court's civil contempt power." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 n.23 (11th Cir. 2005); *see also Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003); *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000); *Newman v. Alabama*, 683 F.2d 1312, 1318 (11th Cir. 1982). If a party contends that another party is violating an injunction, the aggrieved party should move the court for an order to show cause why the other party should not be held in civil contempt. *Roberts*, 207 F.3d at 1298.

*Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 828–29 (11th Cir. 2010); *see also Roberts*, 207 F.3d at 1298 (describing the above as the "time-honored procedure to obtain enforcement" of injunctive relief).

In response, Plaintiffs cite only to *Game Craft, LLC v. Vector Putting, LLC*, No. 6:14-cv-243-CEM-KRS (M.D. Fla.) for the proposition that this Court may enforce another court's injunction. Doc. 39 at 4.[5] While that case presents a similar scenario to this action, it does not support Plaintiffs' position. On the contrary, the court concluded that it did *not* have jurisdiction to enforce a prior court's injunction, even from a court in the same district. *See Game Craft, LLC v. Vector Putting, LLC*, No. 6:14-cv-243-CEM-KRS, at *1 (M.D. Fla. July 29, 2014) (adopting report and recommendation).

---

[4] Defendants do not specify whether they move to dismiss Count I under Rule 12(b)(1) or Rule 12(b)(6). Despite the references to jurisdiction, the Court concludes from this language that Defendants' motion to dismiss Count I is brought pursuant to Rule 12(b)(6).
[5] Much of Plaintiffs' Opposition to Defendant's Motion to Dismiss addresses personal jurisdiction, an issue Defendants do not raise (Doc. 39, p. 9-15).

6

The procedural history of *Game Craft* merits discussion. As in this action, the plaintiffs in *Game Craft* sought to enforce a permanent injunction that was described in a written order but not incorporated into the judgment. *Id.* The issuing court had denied the plaintiffs' motion to reopen the case to enforce the injunction. *Id.* at *2. When the plaintiffs filed a new action seeking to enforce the injunction, the defendants moved to dismiss under Rule 12(b)(6). *Id.* The court concluded that the plaintiffs failed to state a claim on which relief could be granted:

> Injunctions are enforced through a district court's civil contempt power. *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010). If a party contends that another party is violating an injunction, the aggrieved party should file a motion in the case in which the injunction was issued for an order to show cause why the other party should not be held in civil contempt. *Id.* Plaintiffs have cited no authority for the proposition that a court may enforce a permanent injunction issued in an earlier case in subsequent, independent litigation.

*Id.* at *4.

Like in *Game Craft*, Plaintiffs have failed to offer—and the Court has not found—any authority that permits this Court to enforce an injunction issued in a prior action. In contrast, there is abundant Eleventh Circuit caselaw indicating that it may not. *See* Doc. 37 at 6-7 (collecting cases). Accordingly, as in *Game Craft*, Count I does not state a viable cause of action and is due to be dismissed.[6]

---

[6] The Court recognizes that Plaintiffs attempted to follow the proper enforcement procedure by moving for an order to show cause in the 2019 Action. *See, e.g.*, *Paris et al. v. Levinson et al.*, No. 8:19-cv-00423, Doc. 125. However, the proper procedure to challenge the denial of this relief is through an appeal rather than the filing of an independent proceeding. *See Thomas*, 594 F.3d at 829 (noting that the denial of a motion for an order to show cause why a party should not be held in contempt for the failure to comply with an injunction is an appealable order). A review of the docket in the 2019 Action reveals that Plaintiffs did not file an appeal.

B. <u>Declaratory Relief – Count II</u>

In Count II, Plaintiffs seek a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), declaring the parties' rights, entitlements, duties, and obligations created by the 2019 Action. Doc. 31 ¶¶43-49. Defendants argue that this claim is a reiteration of Count I and simply a different means of requesting enforcement of another court's injunctive relief, which this Court lacks jurisdiction to do. Doc. 37 at 8. As such, Defendants move for dismissal. *Id.*[7]

The Declaratory Judgment Act provides, "In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "threshold question" for a claim arising under the Declaratory Judgment Act is "whether a justiciable controversy exists," which determines whether the court has subject-matter jurisdiction. *Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (emphasizing that the "actual controversy" requirement is "jurisdictional" and a "threshold question in an action for declaratory relief") (internal quotation marks omitted). To confer jurisdiction, "under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d

---

[7] Although Defendants again do not identify which subsection of Rule 12 they move under, the Court will interpret the motion to dismiss Count II as being made pursuant to Rule 12(b)(1).

1547, 1552 (11th Cir. 1985). "Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.*

A plaintiff must also allege that the requested declaratory relief is likely to resolve the uncertainty and the alleged injury. In *Otwell v. Alabama Power Company*, for example, the Eleventh Circuit upheld the dismissal of a declaratory judgment claim. 747 F.3d 1275, 1280 (11th Cir. 2014). The district court in *Otwell* had concluded that the question on which the plaintiff sought a declaration—whether a right existed— would not resolve the ultimate disputes of the case: whether the right was violated and whether the defendant could otherwise avoid liability. *Id.* Similarly, in *Stevens v. Osuna*, the Eleventh Circuit upheld a dismissal based on the district court's determination that the relief requested "would do little to provide concrete relief and clarification to the parties." 877 F.3d 1293, 1312 (11th Cir. 2017).

Even where a court has jurisdiction to hear a declaratory judgment action, it is "under no compulsion to exercise that jurisdiction." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). The Declaratory Judgment Act confers on courts "unique and substantial discretion in deciding whether to declare the rights of litigants." 515 U.S. at 286. As the Eleventh Circuit recently emphasized, "while federal courts normally have an "unflagging obligation" to exercise our jurisdiction, where declaratory judgments are concerned this imperative "yields to considerations of practicality and wise judicial

administration." *James River Ins. Company v. Rich Bon Corp. et al.*, ---F. 4th ---, 2022 WL 1616872 (11th Cir. May 23, 2022) (quoting *Wilton*, 515 U.S. at 284, 288).

When determining whether to exercise their discretion, courts proceed cautiously in actions where a party seeks a declaration regarding a prior judgment. "Declaratory proceedings were not intended to and should not serve as a substitute for an appeal." 22A Am. Jur. 2d Declaratory Judgments § 26. An action for a declaration may not be employed to "relitigate a claim already adjudicated" nor "assert technical defects or mere error in a prior judgment." Restatement [Second] of Judgments § 33 (Am. L. Inst. 1982). On the other hand, when a prior judgment is ambiguous, declaratory relief may be appropriate for clarification as long as it does not "derogate from the binding effect of the prior decision," but rather "specif[ies] what was decided." *Id.*

Courts also consider whether another remedy would be more appropriate to resolve the controversy. The Federal Rules of Civil Procedure provide that the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise permitted. Fed. R. Civ. P. 57. However, when determining whether to exercise their discretion, courts "should lean toward declining the action if another remedy, such as a coercive action on an existing claim, is plainly available and would have wider res judicata effects," Restatement [Second] of Judgments § 33, or is otherwise "more effective," 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2758 (4th ed. 2008).

Two cases from the Eleventh Circuit bear on these principles in relation to the instant action. In *Antell v. Aetna Inc.* and *Gardner v. Cigna*, the plaintiff sought a declaratory judgment in order to challenge a prior holding regarding an injunction. 469 F. App'x 761, 762 (11th Cir. 2012); 477 F. App'x 542, 544 (11th Cir. 2012).[8] The Eleventh Circuit had previously instructed the plaintiff in both cases to challenge the injunction through a motion for contempt or sanctions to the district court that had issued it. *Id.* Instead, the plaintiff brought two new actions requesting declaratory relief. *Id.* The Eleventh Circuit held that the district court's dismissal of both declaratory judgment actions was "clearly" not an abuse of discretion, because a "declaratory judgment is no substitute for following the established procedures for testing injunctions, to wit: contempt and sanctions." *Id.*

This action is less clear than *Antell* and *Gardner*. Plaintiffs do not seek to challenge the relief ordered in the 2019 Action, but rather request a declaration of the duties, obligations, rights, and entitlement of the parties that the judgment created. Doc. 31 ¶46. Plaintiffs allege that there is an actual controversy with respect to the May 18 Order, because the parties disagree about whether Defendants' actions violate it. *Id.* at ¶47. Plaintiffs further allege that the controversy is causing them ongoing harm from Defendants' belief that they do not have any injunctive obligations. *Id.* at

---

[8] Unpublished opinions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2; *see also U.S. v. Riley*, 706 F. App'x 956, 963-64 (11th Cir. 2017) (district court did not err by relying on an unpublished Eleventh Circuit opinion where the court understood the opinion's persuasive nature and did not err in its legal analysis).

¶¶37, 48. These allegations are sufficient to establish the existence of an actual controversy that is causing Plaintiffs ongoing injury for the purpose of subject-matter jurisdiction.

The discretionary exercise of this Court's jurisdiction is not warranted, however, because the injury Plaintiffs allege would not be adequately remedied by a declaratory judgment in this action. *See Otwell*, 747 F.3d at 1280; *Stevens*, 877 F.3d at 1312. Plaintiffs do not request a mere clarification of the prior court's order, but a finding that Defendants *violated* it. Doc. 31 ¶47. Plaintiffs further seek to *enforce* the injunctive relief they assert was issued. *Id.* at ¶49 (as part of Count II, requesting an order directing third party webhosts to perform the actions necessary to the injunctive relief).[9] As in *Otwell* and *Stevens*, a declaratory judgment would not be dispositive of the ongoing controversy between the parties. Rather than through a collateral declaratory action, the relief Plaintiffs seek would be more effectively and appropriately addressed via the "established procedure for testing injunctions." *See Gardner*, 477 F. App'x at 544; *Antell*, 469 F. App'x at 762. Therefore, in its discretion, the Court will dismiss Count II.

---

[9] The Court notes that the disagreement between the parties appears to extend to the question of whether the 2019 Action even resulted in injunctive relief, *see* Doc. 37 at 7 (asserting Plaintiffs did not receive any injunctive relief because it was not listed in the May 19 Judgment), another issue that is most appropriately raised before the court that issued the judgment in question.

12

C. <u>Defamation Per Se – Count III</u>

Count III asserts a claim of defamation per se. Doc. 31 ¶¶50-59. To state a claim of defamation under Florida law,[10] the plaintiff must allege that "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015). If the publication is defamatory per se, however, the plaintiff need not plead the existence of damages, which are presumed from the nature of the defamation. *See Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1274-75 (S.D. Fla. 2020).

A written publication constitutes libel per se if, "when considered alone without innuendo," it, *inter alia*, "tends to injure one in his trade or profession." *Richard v. Gray*, 62 So.2d 597, 598 (Fla. 1953). A per se defamatory statement that tends to injure one in his trade or profession "must impute conduct to plaintiffs [that is] incompatible with the essential functions of their respective jobs… [and that goes] directly to a person's ability to perform duties essential to his or her employment, or [i]s sufficiently related to skills required of the profession." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1249 (S.D. Fla. 2014) (citations omitted).

When determining whether a publication is libelous per se, the Court may consider only the "four corners of the publication," *see, e.g.*, *Ortega Trujillo v. Baco Cent.*

---

[10] *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011), *certified question answered*, 107 So. 3d 362 (Fla. 2013) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law.").

13

*Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (citations omitted), and its injurious nature must be apparent from the words in the statement itself, *see Campbell v. Jacksonville Kennel Club Inc.*, 55 So. 2d 495, 497 (Fla. 1953). The Court should not interpret the language "in the extreme," but rather construe it "as the common mind would naturally understand it." *Ortega*, 17 F. Supp. 2d at 1339. At the motion-to-dismiss stage, the Court may dismiss for failure to state a claim upon which relief may be granted only where the statement "could not possibly have a defamatory or harmful effect." *Wolfson v. Kirk*, 273 So.2d 774, 778 (Fla. 4th DCA 1973).

Here, Plaintiffs allege that the Defendants committed libel per se when they knowingly and "falsely proclaimed that they were victorious in [the 2019 Action]." Doc. 31 ¶52. In their Motion to Dismiss, Defendants argue that the Third Amended Complaint "fails to state any specific defamatory statements that occurred after the entry of the final judgment in the 2019 Case." Doc. 37 at 9.

Contrary to Defendants' argument, Plaintiffs allege a specific instance in which Defendants published the following statement:

> Find out the real truth about the Oxebridge lawsuit and how little Chrissy lost. Use your noggin folks, there's a reason why this page is still up. Chris Paris wants his clueless followers (if he has any) to believe he won. Get the real truth why this page is still live [sic] and well, and why the con-man did not get a penny from us.

Doc. 31 ¶23.[11] The content of the statement demonstrates that it was likely published after the entry of the judgment in the 2019 Action. Accepted as true, then, Plaintiffs'

---

[11] The Court notes that it cannot consider the additional statements contained in Plaintiffs' Opposition to Defendants' Motion to Dismiss that were not alleged in the Third Amended

14

allegation is sufficient to plausibly establish that the Defendants published a false statement about the Plaintiffs regarding the outcome of the prior litigation to a third party. Plaintiffs assert that the statement constitutes defamation per se because it "tended to injure [them] in [their] business or profession." *Id.* at ¶59. In reviewing the facial sufficiency of this claim, the Court may consider only the "four corners" of the statement, which does not include any information about the prior litigation it references. Even without this context, however, the statement could reasonably be interpreted to attribute to Plaintiffs the characteristic of dishonesty: specifically, the description of him as a "con-man" and the implication that he did not accurately recount the facts of the lawsuit on his website. An accusation of dishonesty could foreseeably injure Plaintiffs in their business, which Plaintiffs allege includes operating a website that serves "as a news site about the industry," *id.* at ¶18, the operation of which the ability to accurately report events is arguably "essential to." *See Klayman*, 22 F. Supp. 3d at 1249. As such, the Court cannot conclude that the statement "could not possibly have a defamatory or harmful effect" for the purpose of a motion to dismiss under Rule 12(b)(6). *See Wolfson*, 273 So. 2d at 778. Therefore, the Court will deny the Motion to Dismiss as to Count III.

---

Complaint. Plaintiffs have not sought to amend the Third Amended Complaint to add these allegations and cannot do so through their response. The determination of a Motion to Dismiss is based solely on the operative complaint and any documents that are attached to it. *See* Fed. R. Civ. P. 12(d); *see also Austin v. Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008).

Accordingly, it is **ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 37) is **GRANTED IN PART and DENIED IN PART**.

2. Counts I and II are **DISMISSED**.

3. In all other respects, Defendants' Motion to Dismiss is **DENIED**. Defendants shall answer the Third Amended Complaint, Count III, in accordance with the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** in Tampa, Florida on June 24, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties